**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO TELEPHONE,<br><br>    Plaintiff,<br><br>        v.<br><br>HERMANDAD INDEPENDIENTE DE EMPLEADOS TELEFONICOS, INC., ET ALS.,<br><br>    Defendants. | CIVIL NO. 05-1806 (PG) |

**OPINION AND ORDER**

In this action, brought pursuant to Section 301 of the Labor Management Relations Act ("LMRA" or the "Act"), 29 U.S.C. § 185, Plaintiff Puerto Rico Telephone ("PRT") seeks declaratory and injunctive relief against the Hermandad Independiente de Empleados Telefonicos, Inc. ("HIETEL" or "the Union"), its officers and members, and against Angel F. Ferrer-Cruz, Director of the Bureau of Conciliation and Arbitration of the Department of Labor of the Commonwealth of Puerto Rico ("the Bureau"), and Roman M. Velasco-Gonzalez, Secretary of the Department of Labor of the Commonwealth of Puerto Rico (the "DOL").

Before the Court now are PRT's motion for summary judgment (Docket No. 61), co-defendants HIETEL, Telizia Dolz, Jose D. Diaz and Samuel Mejias' cross motion for summary judgment (Docket No. 63), and co-defendants Roman M. Velasco-Gonzalez and Angel F. Ferrer-Cruz's cross motion for summary judgment (Docket No. 71).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In a status conference held on June 8, 2006, all parties agreed to submit the case through briefs without the need for a trial. See Docket No. 49. Accordingly, except otherwise stated, the Court culls the relevant facts from the parties' joint statement of uncontested material facts (Docket No. 57):

Civil No. 05-1806 (PG)                                                                  Page 2

1. Plaintiff, PRT, is a corporation duly organized and existing under the laws of the Commonwealth Puerto Rico. At all times relevant, PRT was, and still is, a telecommunications company engaged in the administration of communication services, specifically, among others, it provides and administers telephone and cellular phone services, and sale and maintenance of PABX systems, Key systems and data equipment, within and outside of Puerto Rico, and therefore, it is part of an industry engaged in interstate commerce within the meaning of Section 2(7) of the Labor Management Relations Act, 29 U.S.C. sec. 152(7).

2. HIETEL is a labor organization duly organized under the laws of the Commonwealth of Puerto Rico, with offices and place of business located in San Juan, Puerto Rico. HIETEL is the exclusive collective bargaining representative of certain employees of PRT throughout its Puerto Rico facilities. Said employees are engaged in an industry affecting commerce within the meaning of Section 301 of the Act, 29 U.S.C. 185. HIETEL, at all times relevant hereto, was, and still is, a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. 152(5).

3. Codefendant Telizia R. Dolz has been the President of HIETEL since April of 2004.

4. Codefendant José D. Díaz González, at all times relevant hereto, was, and still is an Official of HIETEL.

5. Codefendant Samuel Mejías Ríos is an Official of HIETEL.

6. PRT and HIETEL are, and at all relevant times hereto have been, parties to the Collective Bargaining Agreement (the "Agreement" or the "CBA") covering PRT employees who are represented by HIETEL. The current Agreement was signed on April of 2004, and the parties

       agreed that it would become effective retroactively on January 1, 2004, except for specific sections and matters for which Article 71 of the Agreement provides a different effective date. The Agreement will expire on December 31, 2008.

7. The Department of Labor is not a party to the above-mentioned Agreement.

8. Article 57 of the CBA provides the steps and procedures that will be followed by the parties in resolving grievances and complaints. Those grievances that are not resolved in the initial three stages shall be submitted to arbitration. <u>See</u> Translation of Collective Bargaining Agreement, Docket No. 19-2.

9. PRTC and HIETEL agreed to use Arbitrators of the Bureau of Conciliation and Arbitration of the DOL.

10. The Bureau of Conciliation and Arbitration of the DOL provides labor arbitration services at no cost to the parties.

11. Co-defendant, Angel F. Ferrer Cruz, prior to his appointment as Director of the Bureau, participated as mediator in the negotiations of the Agreement executed between PRT and HIETEL, with an effective date of January 1, 2004.

12. Article 57, Section 3, of the Agreement states that the internal Rules and Regulations of the Bureau that will govern all the grievances and controversies submitted for arbitration shall be the Bureau's Rules and Regulation that were in effect as of December 26, 2002. The relevant portion of the article states: "For purposes of this Article, the Bureau rules that will govern will be the ones that were in effect as of December 26, 2002, and no amendments to said rules or any new set of rules, will apply during the life of this Agreement."

13. On December 26, 2002, the Bureau's internal Rules and Regulations that were in effect were the ones signed and promulgated on September 27, 1999, by the former Secretary of the DOL, Aura L. González Ríos. The Puerto Rico Department of State assigned the Official Number 6065 to this set of internal Rules and Regulations (hereinafter, "Rules and Regulations of 1999").

14. Article 57, Section 10(b), of the Agreement states that the Arbitrators do not have the authority or power to alter, amend, change or modify any of the clauses and sections of the Agreement.

15. Article 59, Section 1 of the Agreement provides that in the event that any disposition of the Agreement is declared illegal by a court, governmental agency or statute, such determination will only affect the specific disposition that was declared illegal and will not invalidate the remaining parts of the Agreement.

16. Article 70 of the Agreement states that the Agreement cannot be modified, amended, changed or terminated, except by written stipulation duly signed by the parties' authorized representatives.

17. On June 3, 2003, the former Secretary of the DOL, Víctor Rivera Hernández, signed a new set of internal Rules and Regulations for the Bureau.

18. The internal Rules and Regulations of the Bureau signed on June 3, 2003, are the latest internal Rules and Regulations issued by the Bureau (hereinafter "Rules and Regulations of 2003").

19. Article IV of the Regulation of 1999, titled Application and Interpretation, provides, in the relevant part, that "[i]t will be understood that in requesting the services of employer/employee arbitration rendered by the Bureau, the parties accept, acknowledge and submit to this Regulation for all its pertinent purposes".

>       Likewise, Article IV of the Regulation of 2003, also titled Application and Interpretation, states that "[i]t will be understood that in requesting the services of labor arbitration rendered by the Bureau, the parties accept, acknowledge and submit to this Regulation for all pertinent purposes."
>
> 20.   PRT has requested HIETEL to cease requesting the Bureau the consolidation of grievances and controversies without PRT's consent.

On July 21, 2005, PRT filed a complaint against defendants alleging that the HIETEL, through its officers, requested the Bureau to apply to the grievances submitted for arbitration an internal set of rules and regulations different to the one the parties voluntarily selected in the CBA executed by and between PRT and HIETEL on April of 2004. See Docket No. 1. That is, the HIETEL requested the Bureau to apply the Rules and Regulations of 2003, as opposed to the Rules and Regulations of 1999, when determining whether or not to consolidate grievances submitted to the Bureau for arbitration. According to Plaintiff, the Rules and Regulations of 1999 do not authorize the Bureau, or any of its arbitrators, to consolidate grievances or controversies submitted for arbitration unless all parties provide their written consent, whereas, the Rules and Regulations of 2003 provide that, per the request of at least one party to the grievance, the Director of the Bureau may consolidate grievances and controversies submitted for arbitration. See Docket No. 1, at ¶ 15-16, 18.

Despite PRT's objections, the Director of the Bureau granted the HIETEL's requests for consolidation. The Director of the Bureau based his decision on the decision of the Supreme Court of Puerto Rico, Medina v. Cruz Azul de P.R., 155 D.P.R. 735 (2001), which states, in pertinent part, that when parties agree to submit grievances for arbitration to the Bureau, they incorporate the Bureau's internal rules and regulations to their collective bargaining agreement. See Docket No. 1-14, Exhibit J. Therefore, according to the Director of the Bureau,

Civil No. 05-1806 (PG)                                                              Page 6

the Rules and Regulations of 2003, not the Rules and Regulations of 1999, currently govern arbitration procedures despite the language of the Agreement. See Docket No. 1 at ¶ 24.

In light of the above, Plaintiff requested this Court issue a permanent injunction enjoining the HIETEL from violating the terms of the Agreement by requesting the consolidation of grievances submitted for arbitration without PRT's written consent, and enjoining the Bureau's arbitrators from applying a different set of rules and regulations than the one stipulated by PRT and HIETEL in the Agreement.[1] See Docket No. 1.

Having agreed to submit their legal controversies to the Court for resolution without the need for trial, see Docket No. 49, each party filed a brief in support of their position. In their motion for summary judgment, Plaintiff argued that the collective bargaining agreement between PRT and the HIETEL stipulates that the rules and regulations that will govern all grievances and controversies submitted for arbitration to the Bureau shall be the Rules and Regulations of 1999, and no amendment to such regulations or any new regulations shall apply during the term of the Agreement. See Docket No. 1. The relevant difference between the Rules and Regulations of 1999 and the Rules and Regulations of 2003 is that the latter provides for the consolidation of claims if at least one of the parties to the dispute requests it. This was agreed upon by the parties despite the fact that by the date of execution of the Agreement a new set of Bureau regulations had already been promulgated.

---

[1] Plaintiff also requested this Court enter a declaratory judgment declaring the Rules and Regulations of 2003 void and illegal, and hence, inapplicable to any grievance submitted to the Bureau for arbitration because they had not been registered in the State Department. See Docket No. 1 & Docket No. 61. However, in Plaintiff's opposition to the Department of Labor's motion for summary judgment, PRT conceded that the Rules and Regulations of 2003 need not be registered in the Department of Labor in order to be valid. See Docket No. 76 at page 2. Accordingly, Plaintiff's allegations in its complaint, nor the parties' arguments in their motions for summary judgment to that effect will be discussed herein as the Court deems such a discussion as moot.

Civil No. 05-1806 (PG)                                                    Page 7

Plaintiff also notes that the Agreement stipulates that the Bureau's arbitrators do not have authority or power to alter, amend, change or modify any of the clauses and sections of the Agreement. However, to no avail, Plaintiff has repeatedly asked the HIETEL officials to refrain from unilaterally requesting the consolidation of grievances without PRT's consent, and the Bureau from applying the Rules and Regulations of 2003 when determining whether or not to consolidate grievances in violation of the CBA.

Plaintiff argues that, according to Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448 (1957), Section 301 of the LMRA authorizes courts to order specific performance of collective bargaining agreements, and thus, a permanent injunction against defendants is an adequate remedy. Citing Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica de Puerto Rico, 317 F. Supp. 217 (D.P.R. 1970), Plaintiffs further argued that arbitrators are bound by the provisions of a collective bargaining agreement, and cannot alter or vary them. Hence, the Court should order the Bureau to implement the terms and conditions of the Agreement.

In the brief submitted to the Court, co-defendants the HIETEL, Telizia Dolz, Jose D. Diaz and Samuel Mejias argue that this is not a proper action under Section 301 of the LMRA which grants jurisdiction to federal courts in actions for breach of contract, because here the issue is the validity of a clause affecting a third party, who is not a party to the contract - in this case the Department of Labor. See Docket No. 63. Co-defendants also question whether or not Section 3 of Article 57 of the Agreement is valid because it imposes on the Bureau, which is not a party to the Agreement, the application of rules and regulations that have been revoked and superseded by new ones. Finally, co-defendants sustain that Section 3372 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 3372, provides that the contracting parties may make agreements and establish clauses which they deem advisable provided they

are not in contravention of law, morals and public order. Therefore, because the Rules and Regulation of 1999 were no longer in force at the time the CBA was executed, Article 57 of the Agreement is invalid. Co-defendants also note that while the Rules and Regulations of 1999 were *silent* on the matter of consolidation of cases, the Rules and Regulations of 2003 provide for the consolidation or separation of cases upon the request of one or both parties. See Docket No. 63 at page 4.

Co-defendants Angel F. Ferrer-Cruz and Roman M. Velasco-Gonzalez also filed a motion for summary judgment arguing, in relevant part, that the LMRA expressly excludes the Department of Labor from any controversy regarding the alleged violations of a collective bargaining agreement, and that Plaintiff's complaint should be dismissed because PRT has failed to demonstrate the four prongs required for a permanent injunction to be issued in its favor.

## II. APPLICABLE LAW AND ANALYSIS

### A. Applicable Standard of Review

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir .2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st

Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). However, "[w]hen deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir.1997) (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir.1996)). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

However, the particular procedural vehicle by which this case is presented to this Court requires some departure from the customary standard. "As noted earlier, the parties cross-moved for summary judgment on stipulated facts, with their legal arguments focused on the significance to be accorded to the agreed-upon facts. Thus, in effect, the parties submitted this case to the

Civil No. 05-1806 (PG)                                                                     Page 10

district court as a case stated." Reich v. John Alden Life Ins. Co., 126 F.3d at 6 (internal citations omitted). To that effect, the First Circuit has stated:

> [W]here, *in a nonjury case*, the basic dispute between the parties concerns the factual inferences … that one might draw from the more basic facts to which the parties have drawn the court's attention, where there are no significant disagreements about those basic facts, and where neither party has sought to introduce additional factual evidence or asked to present witnesses - the district court is freed from the usual constraints that attend the adjudication of summary judgment motions. The court may then engage in a certain amount of differential factfinding, including the sifting of inferences. By the same token, the court of appeals may assume that the parties considered the matter to have been submitted below as a case ready for decision on the merits. Consequently, the standard for appellate oversight shifts from de novo review to clear-error review.

Equal Employment Opportunity Com'n v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir.), cert. denied, 516 U.S. 814 (1995) (internal citations and quotation marks omitted) (emphasis ours). In light of the foregoing, to determine the applicable standard of review, this Court must first ascertain whether or not this is a nonjury case. Because Section 301 of the LMRA does not expressly provide for a jury trial, we must now ask whether a jury trial is required under the Seventh Amendment. See Stewart v. KHD Deutz of America Corp., 75 F.3d 1522, 1525 (11th Cir.1996).

### 1. Right to Jury Trial

The Seventh Amendment secures the right to a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars … ." U.S. Const. amend. VII. The phrase "common law" is used in contradistinction to equity, that is, suits in which legal rights are to be ascertained. See Curtis v. Loether, 415 U.S. 189, 193 (1974). "Thus, to determine whether the Seventh Amendment entitles a particular litigant to a jury trial in a particular case, we must determine whether that case will resolve legal rights, or only equitable rights." Golden v. Kelsey-Hayes Co., 73 F.3d 648, 659 (1st Cir.1996).

To determine the availability of a jury trial under the Seventh Amendment when a federal statute does not explicitly provide for a jury trial, we must employ a two-part inquiry. Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 565 (1990). "[T]he Court must examine both the nature of the action and of the remedy sought." Tull v. U.S., 481 U.S. 412, 417 (1987). First, we compare the nature of the issues to be resolved to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we assess whether the remedy sought is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-18 (internal citations omitted). The nature of the remedy sought is the more important inquiry in our analysis. Terry, 494 U.S. at 565.

As for the first inquiry, we must note that the Supreme Court has stated that Section 301 of the LMRA actions are "comparable to a breach of contract claim," and are thus a legal issue. See id., 494 U.S. at 570 & n. 7. This determination is only preliminary, hence, we now turn to the second inquiry: is the relief the plaintiffs seek legal or equitable? In its complaint, PRT seeks permanent injunctive relief restraining and enjoining defendants from violating the terms of the Agreement, as well as any "other and further relief to which the Plaintiff may be entitled under the circumstances …." See Docket No. 1. "The decision to grant or deny permanent injunctive relief is an act of *equitable* discretion by the district court … ." eBay Inc. v. MercExchange, L.L.C., 126 S.Ct. 1837, 1839 (2006) (emphasis ours). See also Mertens v. Hewitt Associates, 508 U.S. 248, 255 (1993) (injunction or restitution are remedies traditionally viewed as equitable); Weinberger v. Romero-Barceló, 456 U.S. 305 (1982) (decision to grant or deny permanent injunctive relief is an act of equitable discretion); In re Blinds to go Share Purchase Litigation, 443 F.3d 1, 8 (1st Cir.2006) (specific performance is an equitable remedy). As for the second inquiry, we conclude Plaintiff only seeks equitable remedies. Because according

Civil No. 05-1806 (PG)                                                    Page 12

to Supreme Court precedent the second inquiry is more important than the first in determining the nature of the rights asserted by a plaintiff, we conclude that the Plaintiff in the instant case does not assert legal rights, and thus, is not entitled to jury trial.

Having found this is a nonjury case, the applicable standard of review is as follows: this Court is required first to engage in some differential factfinding - i.e., the drawing of factual inferences from the stipulated facts - and then to make a legal determination based upon these facts. See Reich v. John Alden Life Ins. Co., 126 F.3d at 6; Steamship Clerks Union, Local 1066, 48 F.3d at 603. See also Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-644 (1st Cir.2000).

**B. Analysis**

This case arises under Section 301(a) of the Labor Management Relations Act, insofar as Plaintiff requests this Court enjoin defendants from violating the terms of the CBA and vacate an award by the arbitrator allowing the consolidation of multiple grievances into a single proceeding. Section 301 provides for suits for violation of contracts between an employer and a labor organization and states as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

"By its terms, this provision confers federal subject-matter jurisdiction only over suits for violation of contracts." Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW, 523 U.S. 653, 656 (1998). In Textile Workers' Union v. Lincoln Mills, 353 U.S. 448 (1957), the Supreme Court held that Section

301 not only conferred jurisdiction on federal courts in cases involving breaches of collective bargaining agreements but mandated that federal substantive law be applied. See also Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board, 454 F.2d 38, 41 (1st Cir.1972); Fant v. New Engl. Power Serv., 239 F.3d 8, 14 (1st Cir.2001) ("In creating § 301 of the LMRA, Congress intended that a comprehensive, unified, body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements.").

"An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement." Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 744 (1981) (citing Alexander v. Gardner-Denver, 415 U.S. 36, 53 (1974)). "It is their [the arbitrator's] responsibility to give the contract a reasonable construction in order to avoid harsh, illogical, or absurd results." Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de P.R. Local 610, 811 F.Supp. 41, 44 (D.P.R. 1993). "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, even the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica de P.R. Local 610, 959 F.2d 2, 4 (1st Cir.1992) (citing Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir.1988)).

"[R]eview of labor arbitral decisions is extremely narrow and extraordinarily deferential." Kraft Foods, Inc. v. Office & Prof'l. Employees Union, Local 1295, 203 F.3d 98, 100 (1st Cir.2000) (quoting Dorado Beach Hotel

Civil No. 05-1806 (PG)                                                    Page 14

Corp., 959 F.2d at 3-4). Although the arbitrator's decision enjoys a substantial degree of deference, this does not mean that the arbitrator has "carte blanche approval" for any decision that he might make. Dorado Beach Hotel, 959 F.2d at 4. The arbitrator "has no general authority to invoke public laws that conflict with the bargain between the parties. His task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties." Arkansas-Best Freight System, Inc., 450 U.S. at 744 (internal citations and quotation marks omitted). The arbitrator "may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Gardner-Denver, 415 U.S. at 53 (internal citations and quotation marks omitted). Therefore, in light of these standards, we must now weigh the parties' arguments.

   As stated in the background section of this order, in April of 2004, PRT and the HIETEL entered into a collective bargaining agreement, which provides that all complaints or grievances shall be settled by a four-step grievance procedure, the final step of which is arbitration. Section 3 of Article 7 of the agreement provides that the arbitrators to be used shall be those of the Bureau, unless otherwise agreed to, and that the Bureau's norms that will govern all of the grievances and controversies submitted for arbitration shall be the Rules and Regulations of 1999. See Docket No. 19-5. Section 3 of Article 7 also specifies that no amendments to said rules or any new regulations will be applicable under the Agreement. Id. Section 10 of Article 57 of the CBA states that the arbitrator does not have the power to alter, amend, change, modify, add or remove the provisions of the Agreement.

   On the date the parties signed the CBA, a new set of rules and regulations had been promulgated by the Bureau: the Rules and Regulations of 2003. Article

Civil No. 05-1806 (PG)                                                    Page 15

XXII of these new rules provides that, to guarantee the procedural economy of the services offered by the Bureau, the Director may, at any time, at the request of one or both parties, consolidate or separate every kind of case for purposes of the hearing. The Director's decision is subject to the following factors: (a) the identity of the parties involved in the controversy; (b) if the controversies involve common issues of law or fact; (c) that prejudice is not caused to any party; (d) procedural economy; (e) the avoidance of multiplicity of remedies. See Docket No. 18-3. On the contrary, the Rules and Regulations of 1999, which the parties to the CBA decided would be applicable to the complaints submitted to the Bureau for arbitration, are silent on the matter of consolidation and separation of grievances. See Docket No. 18-2. However, in its complaint, PRT sustains that the Rules and Regulations of 1999 "do not authorize the Director of the Bureau nor any of its Arbitrators to consolidate grievances or controversies submitted to them for arbitration, except by written consent of all the parties." See Complaint, Docket No. 1 at ¶ 15.

On June of 2004, several members of the HIETEL requested the consolidation of grievances that had been submitted to the Bureau for arbitration. The Director of the Bureau granted the consolidation of these grievances despite the PRT's multiple oppositions. The Director of the Bureau's decision to consolidate was based on the factors set forth in the Rules and Regulations of 2003 and the parties' arguments. See Docket No. 18-10. Plaintiff now seeks to vacate the Director of the Bureau's award allowing the consolidation of multiple grievances in a single arbitration proceeding. Plaintiff seeks a permanent injunction prohibiting the HIETEL, its officers and members from requesting, and enjoining the Bureau and its arbitrators from granting the consolidation of grievances without the PRT's consent. However, after an assiduous review of the CBA, the Rules and Regulations of 1999 and the Rules and Regulations of 2003, this Court disagrees with Plaintiff as we shall explain.

Civil No. 05-1806 (PG)                                                    Page 16

Contrary to what Plaintiff is attempting to make us believe, the Rules and Regulation of 1999 do not contain any provisions for the consolidation or separation of grievances. Much less do they require the written consent of both parties to the grievance for consolidation to take place, as alleged by Plaintiff in its complaint and its brief. Moreover, nothing in the Agreement in question excludes multilateral arbitration of disputes. Therefore, even if the Director of the Bureau had looked to the Rules and Regulations of 1999 to the Union's request for consolidation, as contracted by the parties to the Agreement, the Director was simply not under any obligation to require the written consent of *both* parties to the grievance. There being no rule or statute or stipulation between the parties to the CBA forbidding the "*ex parte*" consolidation of grievances, the question of whether or not the "grievances being arbitrated separately should be consolidated into a single arbitration was a 'procedural matter' that was presumptively for the arbitrator" to decide. Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 10-11 (1st Cir.2005) (citing Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, 321 F.3d 251, 254 (1st Cir.2003)). See also Avon Prods. Inc. v. UAW, Local 710, 386 F.2d 651, 658-59 (8th Cir.1967) (it is up to the arbitrator, not the courts, to determine whether consolidated grievances presented by the union are to be resolved in single or multiple proceedings).

In the instant case, Plaintiff does not argue that the individual grievances are not arbitrable, but argues only that the multiple grievances before the Bureau may not be consolidated into a single proceeding. As a sister Court put it, "[t]he only issue, whether there should be one arbitration proceeding or two is a procedural one. The question is not whether these grievances shall be arbitrated or not, but only how the arbitration is to be conducted." Fitchburg Paper Co. v. MacDonald, 242 F.Supp. 502, 505 (D.Mass. 1965). In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964), the

Supreme Court held that once it is determined "that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Id. at 557. Therefore, the arguments any party to the grievance wants to make against consolidation "are ones which it should present to the arbitrator." Shaw's Supermarkets, Inc., 321 F.3d at 255 (citing Bechtel Constr., Inc. v. Laborers' Int'l Union, 812 F.2d 750, 753-54 (1st Cir.1987) (district court properly decided that company's defenses are a matter for consideration by the arbitrator, not the courts)).

The First Circuit has also been emphatic that procedural matters are committed to the arbitrator, partly to avoid the kind of delay that may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of national labor policy. Shaw's Supermarkets, Inc., 321 F.3d at 255; John Wiley, 376 U.S. at 558. With this in mind, this Court also finds that the arbitrator's decision to consolidate "is practicable, economical and convenient for the parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards." Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association, 293 F.Supp. 1400, 1403 (D.C.N.Y. 1968). Moreover, the arbitrator's decision to consolidate is also in accordance with the principles set forth in Article IV of the Rules and Regulations of 1999, which states:

> (b) The arbitrator … will apply and/or interpret this Regulation in harmony with its provisions, and its determinations regarding the same shall be final and obligatory for the parties.
>
> (c) This Regulation will be interpreted in such a manner that *the arbitration proceeding is carried out in an expedited way and without the rigid formalities* of the courts of justice.

Civil No. 05-1806 (PG)                                                    Page 18

See Docket No. 18-2 at pages 4-5 (emphasis ours). There being no provisions in the Rules and Regulations of 1999 dictating how consolidation of grievances is to be carried out, the arbitrator's decision conforms with the requirement for the interpretation and application of said rules.

Finally, "[t]here is no evidence in the [CBA] here that the parties did not expect their disputes regarding matters such as consolidation to be resolved through arbitration." Shaw's Supermarkets, Inc., 321 F.3d at 254. "We believe that parties who have agreed to arbitrate a given subject most likely intend and expect that the arbitrator should resolve all issues that arise concerning that subject; if they do not, we think they would clearly express their contrary intent." Id. (citing PaineWebber Inc. v. Elahi, 87 F.3d 589, 592 (1st Cir.1996)). The signing of a valid agreement to arbitrate the merits of the subject matter in dispute presumptively pushes the parties across the "arbitrability" threshold, and thus, we will presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator to resolve. Id.

We, therefore, must conclude that: (1) because there is no question that the grievances are arbitrable, under federal case law, the question whether multiple grievances may be consolidated into one proceeding is one of procedure to be determined by the arbitrator; (2) PRT has no contractual basis for objecting to the consolidation; (3) the Director of the Bureau did not violate the restrictions set forth in the Agreement nor exceeded his powers under the Agreement.

### III. CONCLUSION

In accordance with the foregoing, Plaintiff's motion for summary judgment (Docket No. 61) is **DENIED,** and defendants' motions for summary judgment (Dockets No. 63, 71) are **GRANTED** but on different grounds than those stated by defendants

in their motions. Thus, Plaintiff's claims pursuant to Section 301 of the LMRA are hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, September 30, 2007.

                                                <u>S/ JUAN M. PÉREZ-GIMÉNEZ</u>
                                                JUAN M. PÉREZ-GIMÉNEZ
                                                UNITED STATES DISTRICT JUDGE